IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CINTRON BEVERAGE GROUP LLC | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ROBERT CORR, et al. | : | NO. 10-CV-4568 |

**O R D E R**

AND NOW, this 11th day of April, 2011, IT IS HEREBY ORDERED that Robert Corr's motion to dismiss for lack of *in personam* jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) (Doc. # 5) is GRANTED, and the complaint is DISMISSED as to all defendants for lack of *in personam* jurisdiction.[1] The Clerk of Court is directed to close the case.

In support of this order I make the following findings.

1. Cintron Beverages does not contend (nor does the record support a finding) that this court has general jurisdiction over the defendants in this diversity action. Rather, it asserts that there is specific jurisdiction. Specific jurisdiction is based upon acts occurring within Pennsylvania from which a plaintiff's injury or claims arise. To succeed, Cintron must show that the defendants had sufficient minimal injury-related contacts with Pennsylvania, and the court must find that the exercise of jurisdiction meets "traditional notions of fair play and substantial

---

[1] Robert Corr has filed a motion to dismiss for lack of personal jurisdiction on behalf of himself and the co-defendant corporations. In support of his motion, Corr filed an affidavit stating that he is an officer of Rushnet, Inc. and Apple Rush Co., Inc., and that both companies are insolvent. Corr also states that Rush Beverages, Inc. does not operate or do business, and that he is not affiliated with the defendant Garden Beverage. Although an individual is entitled to represent himself *pro se*, he may not act as an attorney on behalf of others in federal court. *Lutz v. Lavelle*, 809 F. Supp. 323, 325 (M.D. Pa. 1991); 28 U.S.C. § 1654 ("In all courts of the United States the parties my plead and conduct their own cases personally or by counsel."). I can, however, consider Corr's affidavit and Cintron's response in determining whether I have jurisdiction. Therefore, in the interest of judicial economy, and because the same facts apply to the defendant corporations, I grant relief to all defendants.

justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

2. In deciding this question, I must follow a three-prong analysis:

> 1) The defendant must have purposely availed himself of the privilege of acting within the forum state; 2) the cause of action must arise from the defendant's activities within the forum state; and 3) the acts of the defendant must have a substantial enough connection with the forum state such that due process will not be offended by the exercise of jurisdiction.

*Rodale Press, Inc. v. Submatic Irrigation Systems,* 651 F. Supp. 208, 209-10 (E.D. Pa. 1986).

3. In his affidavit contesting this court's jurisdiction, Robert Corr states that neither he nor any of his corporations have Pennsylvania bank accounts, assets, or business operations, and that other than his insisting that Cintron remove its goods from his premises, no defendant initiated any contact with Cintron.

4. Cintron alleges the defendants purposely availed themselves of the privilege of engaging in business with Cintron, a Delaware limited liability company with a principal place of in Pennsylvania, for approximately one year. The affidavit of Christina Lopez, Cintron's accountant, offers the following facts to support jurisdiction, and includes several checks, one from Apple Rush Company, Inc., signed by Robert Corr, and the rest from Garden Distributing, Inc., signed by someone who has not been identified.

- Joseph Roberts from Cintron contacted Corr in early 2008 to offer him the opportunity to distribute Cintron's energy drinks that were manufactured by Cintron in the Chicago, Illinois area.

- Corr was doing business as Garden Beverages, Garden Distributing, Inc., Apple Rush Company, Inc., and Rush Company, Inc.

- Defendants agreed to an initial order and continued ordering from Cintron through the remainder of 2008 and into the early part of 2009.

- Invoices directed payment to Cintron's Philadelphia, Pennsylvania headquarters.

- "On several occasions during the course of the parties approximately one year business relationship, Defendants made payments to [Cintron] by sending checks to [Cintron] at its Philadelphia, Pennsylvania headquarters."

- Defendants sent payments totaling "at least $81,898.53" and owe $217,846.45 for goods "ordered, received, accepted and resold."

5. Ms. Lopez's affidavit is lacking in several respects. It does not state where Joseph Roberts was located at the time of his solicitation.[2] Nothing was done at the Philadelphia address other than to receive payments for invoices that were included with Cintron's products that had been manufactured in and shipped from Illinois. There is no evidence that any of the products furnished to any of these defendants were made or packaged in or shipped from Pennsylvania.

6. It is uncontested that the defendants did not seek to do business with Cintron, the defendants have never been in Pennsylvania and do not do business in Pennsylvania, and there was no written contract.

7. The only contact with this forum was the payments made to the Philadelphia, Pennsylvania address as required by the plaintiffs. This is not enough to confer special jurisdiction. *See Rodale*, 651 F. Supp. at 211 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.")

BY THE COURT:

/s/ J. William Ditter, Jr.
J. WILLIA M DITTER, JR., J.

---

[2] Corr asserts in his affidavit that the first contact was by telephone to his office in Illinois.